BRYAN, Ex parte. See Case No. 8,793.

## Case No. 2,062.

### In re BRYAN.

[3 N. B. R. 110 (Quarto, 28).] [1]

District Court, S. D. Georgia. April 27, 1869.

#### VENDOR'S LIEN—WAIVER—MORTGAGE.

The vendor's equitable lien upon land sold is not discharged by the subsequent taking of a mortgage upon the same land, and takes precedence over a judgment lien obtained prior to the said mortgage.

[Compare Cordova v. Hood, 17 Wall. (84 U. S.) 1; Loomis v. Davenport & St. P. R. Co., 17 Fed. 301; Gilman v. Brown, Case No. 5,441; Brown v. Gilman, 4 Wheat. (17 U. S.) 255. As to the onus of proving the waiver, see Coos Bay Wagon Co. v. Crocker, 4 Fed. 577.]

[1] [Reprinted by permission.]

[Certificate of Frank S. Hesseltine, Register.]

I, Frank S. Hesseltine, register of said court in bankruptcy, do hereby certify, that in the course of the proceedings in said cause the following questions arose pertinent to said proceedings, and were stated and agreed to by Richard K. Hines, Esq., who appeared for Francis W. Forth, a creditor, and L. P. D. Warren, Esq., who appeared for John Neal, another creditor of the said bankrupt. In the year 1858, the said Forth sold to Goode Bryan a tract of land, and took from the said Bryan his three equal promissory notes for the payment of the purchase-money. Bryan received a deed to the land, which deed recited the three notes as the consideration for the same; this deed was never recorded. Afterwards, the said Neal, a creditor of Bryan, recovered three judgments against him in the superior court of Lee county, Georgia, the first being in the year 1861, the second in 1863, and the third in 1865. In the year 1866, the said Bryan executed to the said Forth, a mortgage on the said land, to secure the payment of several notes, two of which are the original notes given for the purchase-money of the land in 1858. These two notes have never been paid; the land has been sold by the assignee; and Forth claims the prior lien on this fund by virtue of his vendor's lien, which Neal opposes, asserting that Forth has waived that lien by taking the mortgage from Bryan, and that his judgment liens are superior to that of the mortgage. The single question here presented for the decision of your honor is: Did the creditor, Forth, by subsequently taking a mortgage upon the land sold, to secure two of the notes given therefor, waive his vendor's lien on this land? As the issue submitted is one of much importance, involving a considerable sum of money, I have given some little time to the examination of the law, and to the consideration of the whole matter, in order to present in as clear and as correct a light as possible the law, as I view it, and its application to this question, for the consideration of your honor, in arriving at a decision thereon. What amounts to a waiver of the vendor's lien? The ablest jurists have given widely different answers to this question. The law on the subject is afloat; and to ascertain from its previous positions the course to a correct and just conclusion in any case, is a labor not without difficulty. This much, I believe, is established in England and in this country, that the vendor, by taking the personal obligation, note, or security of the vendee, does not waive his lien. Beyond this the decisions are conflicting.

In England, the doctrine that the taking of a bond or other distinct and independent real, personal, or collateral security by the vendor, is a waiver of the lien, as he thereby signifies his intention to look to that security, is laid down in Nairn v. Prowse, 6 Ves. 752; where Sir Wm. Grant decided

that the vendor, by taking a pledge of stocks, waived his lien. Also, in Winter v. Lord Anson, 1 Sim. & S. 434, where the taking of a bond was held to be a waiver of the lien; and in Bond v. Kent, 2 Vern. 281; where a mortgage on the land, taken at the time of sale for a part, and a note for the balance, was held to be a waiver as to the balance; though in this case there was, it appears, strong negative evidence that the vendor did not intend to retain his lien for the balance. But that these facts are not, ipso facto, a waiver, is declared by Lord Eldon in Mackreth v. Symmons, 15 Ves. 329, where this whole question is elaborately reviewed and considered. This doctrine is also opposed by the decision in Blackburn v. Gregson, 1 Brown, Ch. 420, where the taking of a bond was held not to be a waiver; in Harrison v. Southcote, 2 Ves. Sr. 389, p. 393, where there were but part payment and a bond for the remainder, Lord Hardwicke, by implication, deciding that the lien would not have been lost; in Elliot v. Edwards, 3 Bos. & P. 181, where the covenant of the vendee, together with the undertaking of a surety, was held to be no waiver; in Grant v. Mills, 2 Ves. & B. 306, where it is decided that the taking of a bill of exchange, accepted by the vendee and his partner, is not a waiver of the lien; and in Saunders v. Leslie, 2 Ball. & B. 509, where the taking of a mortgage on another estate was regarded not conclusive evidence of a waiver of the lien. An inspection of the decisions made by the courts in the several states shows that no greater uniformity exists here.

The doctrine that the taking of other distinct real and collateral security, or personal security other than the vendee, is a waiver of the lien, is supported by very many authorities. See the following cases where the taking of the promissory note of the vendee, with a third person as a surety or indorser, is held to be a waiver of the lien: Way v. Patty, 1 Cart. (Ind.) 102; Vail v. Foster, 4 Comst. [4 N. Y.] 312; Williams v. Roberts, 5 Ohio, 35; Follett v. Reese, 20 Ohio, 546; Eskridge v. McClure, 2 Yerg. 84; Trustees of Schools v. Wright, 11 Ill. 603; Johnson v. Sugg, 13 Smedes & M. 346; Bradford v. Marvon, 2 Fla. 463; and Boon v. Murphy, 6 Blackf. 272. In the last case it was decided to be a waiver, unless there was an express agreement to the contrary; and in the preceding case only prima facie so; and the onus was on the vendor to disprove it. In the case of Tayloe v. Adams, Gilmer, 329, and in McClure v. Harris, 12 B. Mon. 261, it was decided that where the vendee by agreement gave his notes, secured by a mortgage on the land, to a creditor of the vendor, the lien did not exist. In these cases it will be noticed that the mortgages were given at the time of the conveyance, and that the position of the creditors is analogous to that of an assignee

of the vendor, who acquires no lien. In Young v. Wood, 11 B. Mon. 123, the vendor received part payment, and subsequently took a mortgage on the land, and on other property, which was held to be a waiver of the lien. Yet this doctrine is denied by Magruder v. Peter, 11 Gill & J. 217, and [Hallock v. Smith] 3 Barb. 267, where it is laid down that the accepting of a promissory note with an indorser is not a waiver of the vendor's lien. And in Duval v. Bibb, 4 Hen. & M. 113, and Cox v. Fenwick, 3 Bibb, 183, where it is decided not to be a waiver to take a bond with surety. See, also, Dubois v. Hull, 43 Barb. 26, where obtaining a judgment lien was held to be no waiver; Daughaday v. Paine, 6 Minn. 443 [Gil. 304], where a mortgage on the land did not waive the lien, it being agreed otherwise; and Neil v. Kinney, 11 Ohio St. 58, where the taking of a mortgage on the land did not waive the lien.

It is not strange that many jurists, observing the conflict and confusion of the law on this question of what is a waiver of the vendor's lien, have deplored the departure from the strict and simple rule of the old Roman law. It has been stoutly maintained by some eminent judges that this question, as to whether the lien has been waived, is one to be decided by the circumstances and evidence in each case. Lord Eldon, in Mackreth v. Symmons, said: "It does not, however, appear to me a violent conclusion as between vendor and vendee, that, notwithstanding a mortgage, the lien should subsist; the principle has been carried this length—that the lien exists, unless an intention, and a manifest intention, that it shall not exist, appears." And again: "But the doctrine as to taking a mortgage or pledge would be carried too far, if it is understood as applicable to all cases, that a man taking one pledge therefore necessarily gives up another, which must, I think, be laid down upon the circumstances of each case, rather than universally." And Justice Story, notwithstanding his obiter dictum in Gilman v. Brown [Case No. 5,441], where he said, "I have no hesitation to declare that, taking the security of a third person for the purchase-money ought to be held a complete waiver of any lien upon the land. * * * At all events, it is prima facie evidence of a waiver, and the onus is on the vendor to prove by the most cogent and irresistible circumstances that it ought not to have that effect," says, in his Equity Jurisprudence (volume 2, § 1224): "Generally speaking, the lien of the vendor exists; and the burden of proof is on the purchaser to establish that, in the particular case, it has been intentionally displaced, or waived by the consent of the parties. If, under all the circumstances, it remains in doubt, then the lien attaches." Again: "The taking of a security for the payment of the purchase-money is not of itself, as it was in the Roman law, a posi-

tive waiver or extinguishment of the lien. * * * But the taking of a security has been deemed at most as no more than a presumption under some circumstances of an intentional waiver. And if a security is taken for the money, the burden of the proof has been adjudged to lie on the vendee, to show that the vendor agreed to rest on that security and to discharge the land. Nay, even the taking of a distinct and independent security—as for instance, of a mortgage on another estate, or a pledge of other property—has been deemed not to be conclusive evidence that the lien is waived." This doctrine has been adopted by the supreme court of this state. Vide Mims v. Macon & W. R. Co., 3 Kelly, 342; Mims v. Lockett, 23 Ga. 241. Since, then, there is no fixed law as to what amounts to a waiver of the vendor's lien, is it not necessarily a question of fact to be determined by the circumstances of each case? I do not see why it is not justly so. The vendor is given an equitable lien or mortgage on the land sold, to secure the payment of the purchase-money. He seeks to enforce it, and is opposed by the vendee, or other party in interest, on the ground that he has accepted other security in place of this lien—that he has voluntarily consented to yield it. Is this true? Did the vendor regard the other security as the equivalent of his lien? and did he intend and agree to accept it for, and give up that lien? This fact must be proved, and not concluded. If it was contended that he, at the time of the sale, waived the lien and agreed not to look to the land, but the personal credit of the vendee, would not this be a question of fact, to be established by the vendee?

Now, if it is contended that he has waived his lien—consented to yield it by taking other security, as a bond or note with a surety; since it might have been part of the agreement or terms of the sale that he was to have also the bond, note, or other security as a readier means of payment, or as a protection in case of depreciation in the value of the land, or the destruction of its improvements—the land still remaining liable in case the other failed—inasmuch as the additional security might have constituted a part of the consideration of the sale, is not his agreement or intention to waive the lien as much a question of fact, to be fully established by evidence, as it is in the former case? Is the court from an act to conclude an agreement, when that act might have reasonably been one of the terms of an exactly opposite agreement? Will it conclude that A cannot agree to sell the land to B for certain bonds, notes, or stocks, the land to remain subject to the vendor's lien until he receives payment for it? The taking this or that security may or may not, according to the nature of the security or the circumstances of the case, be prima facie evidence of an intention or agreement to waive the lien; and the bur-

den of proof may, by strong corroborating circumstances, going to show such an intention, be shifted from the vendee to the vendor; yet the presumption may be rebutted, and the fact as to what was the agreement or intention remains to be established by evidence, not concluded by law. In the language of Justice Story, "If under all the circumstances it remains in doubt, then the lien attaches."

Concluding, then, that the question whether the vendor has waived his lien, is a question of fact, to be established by evidence—and the supreme court of this state has so decided—how shall the case before the court, from all the evidence presented, be decided? I no longer find any difficulty in coming to a conclusion. It will be noticed that in the cases cited the question decided was, whether the lien ever vested in the vendor? Did he at the time of the sale waive it? Here it is not disputed that Forth for a long time enjoyed a lien on this land; and the question is not—did he by any act at the time of the sale waive his lien, but did he after long possession surrender it? It seems to me that stronger evidence is requisite to establish the giving up of a lien or advantage enjoyed for eight years, than to prove that there was no intention ever to possess it—stronger that it was destroyed than that it never existed. Does not the mind demand clear, indubitable evidence of at least an adequate reason or consideration for the surrender of the lien, before it will find an intention or agreement to yield up the present advantage? Is there such evidence here? I think not. If Forth had taken this mortgage at the time of the sale, inasmuch as the legal mortgage would have been equal to, and taken the place of the equitable mortgage, it would have been natural and reasonable to conclude, as it has been in some cases, that it was the intention to waive the vendor's lien. But it is not reasonable to suppose that a lien of eight years' duration, older and superior to all, is intentionally abandoned or surrendered for an infant mortgage, weaker than the judgment of yesterday. The only evidence before the court is, that Forth, in the year 1866, took a mortgage on the land sold to secure the two notes remaining unpaid, and certain other notes. The intention to surrender the superior lien, possessed since 1858, is not to be assumed from the single fact of the taking of this inferior security. A slight knowledge of the principles upon which men barter and exchange, forbids such a forced conclusion as that the one was given for the other. I can easily conjecture a better reason for the taking of this mortgage. For instance, Forth's ignorance of his vendor's lien—a belief on his part that the existing vendor's lien perished, by virtue of the Code, on the 1st of January, 1863, the contrary not being declared by the supreme court until a late day. These and other causes readily suggest themselves, none of which go to establish an in-

tention or agreement to forego the advantage of the existing lien, and they are not so forced as that conclusion set up for the purpose of getting rid of the prior lien, and bringing in ahead the lien of the subsequent judgment. That the taking of an additional security, of an inferior or equal degree with the former, will not ipso facto discharge a lien which attached by reason of the original security, is decided in Schanck v. Arrowsmith, 1 Stockt. [9 N. J. Eq.] 314.

Since this opinion was written, I have found a digest of the decision of the court, in the case of Boos v. Ewing, 17 Ohio, 500, which case is analogous to the one before the court. As I have not the volume I have been unable to follow the reasoning of the court, or compare its decision with the synopsis, as reported in the digest, which states it as follows: "The vendor of land, by taking a mortgage upon the land sold, to secure the payment of the purchase-money, does not extinguish his prior equitable lien, and the lien of a judgment creditor, obtained between the date of the mortgage and the time when it was recorded, will be postponed to the vendor's lien." The case sustains the view which I have taken, that Forth, by subsequently taking a mortgage upon the land sold to secure the payment of the purchase-money, did not waive his prior vendor's lien; that his lien was prior to the lien of the subsequent judgment, and must first be satisfied out of the proceeds of the sale of the land.

ERSKINE, District Judge. I have carefully read nearly all the authorities cited or referred to by Mr. Register Hesseltine, and although there is a diversity of opinion on the question as to what act and intention will be a waiver of the equitable lien of the vendor of land, I think the register has adopted the correct view in his opinion, and that his conclusion is right; I therefore affirm his decision. The clerk will certify this affirmance to Mr. Register Hesseltine.